Please be aware of our traffic light system. Yellow light comes on when you have two minutes. When the red light comes on we ask you to conclude your remarks unless you're answering a question from the court. Also we have read the briefs and record excerpts but we may not be familiar with the entire record so we certainly appreciate record citations when those are appropriate. The first case of the morning is number 19-10197 United States v. McGinnis. Mr. Beck. May it please the court. My name is Brandon Beck and I represent Eric McGinnis, the appellant here today. Your honors, constitutional law at its essence provides that the more fundamental a right and the more a restriction goes to the heart of that right, the more tailored the restriction must be. And there are two reasons why this court should vacate count two of conviction. First, 922 G8 is unconstitutional on its face. Second, the protective order here is insufficient to support a conviction under 922 G8. Before I move to my first point, I would like to observe that the government has appropriately conceded our challenge to one portion of one of the conditions of supervised release. Although this court is not bound by the government's concession, that's why I will focus on other aspects of the argument today. To my first point, your honors, 922 G8's restriction is not adequately tailored to NRA. The step one. Yes, your honor. Absolutely. Why don't you address that? You just jumped to tailoring. How do you get by step one? Yes, your honor. I assume you will concede we're bound by our decision in NRA versus BATC? Certainly, your honor. And I meant that as just an umbrella introductory point. So in NRA versus ATF in 2012, this court developed a two-pronged or two-stepped analysis when evaluating challenges under the Second Amendment post-Heller. The first step asks whether the law regulates conduct that falls within the scope of the Second Amendment's guarantee. This court articulated that first step in two different ways in NRA. First, asking whether the law harmonizes with the historical traditions associated with the Second Amendment, and also looking at if the law burdens conduct that falls within the Second Amendment's scope. Here, 922 G8 survives step one because it both directly infringes on the right of the people to keep and bear arms, and second, does not fall with a traditional Second Amendment exception. Heller provides some guidance on this point. In Heller, Justice Scalia listed four traditional exceptions to the Second Amendment while noting that it's a non-exhaustive list. Justice Scalia's list included felons, the mentally ill, place restrictions, and then restrictions on the commercial sale of firearms. At the time Heller was decided, 922 G8 to 922 G9 were on the books passed in 1993 and 1994. They are absent from this list. In the footnote, the court could have said, see 922 G. Instead, these four are listed, raising the question, do we then reach step two? There are three other circuits that have applied this same framework post-Heller. The Fourth Circuit, really just the Fourth Circuit and the Tenth Circuit in a series of three cases. Every one of those opinions either accepted that prong one was satisfied, and that's United States v. Reese, Tenth Circuit, 2010, or assumed without deciding that it was satisfied and moved on to the second step. So every case has moved to the What about the Eighth Circuit decision from Judge Colleton? The Eighth Circuit decision from Judge Colleton. And the reason I didn't just list that, I initially said three circuits there are, that's United States v. Binna, and the NRA framework was not applied there. The court applied a version of the other framework that some courts have proposed, originally proposed by Justice Kavanaugh in Heller 2, which is just a historical, traditional analysis. So Binna didn't do the two steps. The two circuits that have done those steps are the Tenth Circuit and the Fourth Circuit, both reaching the second step. And I'd be happy to talk at length about Binna. Under the second step of the NRA analysis, this court looked to whether to apply intermediate or the proper level of scrutiny. Of course, in Heller, the guidance we received is that rational basis is never applicable, and that an interest-balancing approach proposed by Justice Breyer in the dissent is also not applicable. So the two choices are hard to distinguish between interest balancing and intermediate scrutiny, though, isn't it? It does, it seems, appears that way, Your Honor, when you're looking at adequate fit or something like that. One of the things Justice Breyer observed in his dissent was that the government's interest is always so strong, why don't we look at a different way of looking at it? And this court rejected it, and I think so appropriately. Why don't you move on? Let's assume we have a basic knowledge of the cases. Why don't you tell us how those cases apply to 922 G-8 and to the facts of this case? Yes, Your Honor. I mean, personally, I am struck by the length of the sentence in this case, for what it's worth. It is a long sentence. Very long sentence. In a lot of ways, that sentence is appropriate here today. We have an individual who has violated a lot of laws in his activity. We're only challenging one of those laws, 922 G-8, on the basis that it's not adequately tailored specifically to survive strict scrutiny, but also to survive intermediate scrutiny. Now, the other circuits that I've discussed, particularly the Fourth Circuit and the Tenth Circuit, have applied intermediate scrutiny here, and they've done so for four, really three global reasons, and I'd like to address those, and I believe the government will rely on those reasons today. First, courts have noted that 922 G-8 may receive intermediate scrutiny because it only applies to a narrow classification of persons, people that are concerned, people that have exhibited conduct that raises concerns in the context of domestic violence. It's our position, Your Honor, that this is an arbitrary classification of people. I would imagine in the First Amendment context, which Heller looks to at times, would it be appropriate to say that a law receives intermediate scrutiny because it only applies to draft dodgers? May I add, but I have another procedural question here. Your client was convicted on two counts, right? Yes, Your Honor. Was the first count ever vacated? No, it was not, Your Honor. So even if we were to rule in favor of your client on 922 G-8, we would not vacate the first count? That's correct, and so I think your question gets to the concurrent sentences doctrine. Well, I'm aware of the concurrent sentences doctrine, but I was just wondering, so isn't the basis for the illegal possession of a short-barreled rifle the same as this one? It's not, Your Honor. The 922 G-8 count goes to ammunition, not the firearm. Well, what was the basis on the, oh, that it was just a short-barreled gun? It was unregistered, yes, exactly. Okay. So the question of whether we receive intermediate scrutiny because it only applies to a subset of individuals, there would be no analog to that, to say a First Amendment content-based, non-commercial speech restriction receives intermediate scrutiny because it only applies to flag burners or only applies to draft dodgers or only applies to people with a certain political position or only applies to people with a certain religious conviction. Certainly, if it were content-based, meaning it goes to the core, it would receive the higher level of scrutiny to the extent it does go to the core. One of the other arguments I anticipate the government will rely on today, and some courts have accepted, is this observation that this disarmament is only temporary. In other words, it only applies for the duration of the protective order. Of course, we've seen protective orders, for example, in United States v. Reese that was 50 years long. In this case, it was two years long. He was only three days away from the protective order being lifted, correct? I believe that's so, Your Honor. I haven't cut... I think it was a two-year protective order and he was arrested two days before it expired. I have to say that these arguments that you're making, they may be well taken. They seem to go to tailoring. That's exactly right. Meaning if the classification of persons is narrow or broad, if the prohibition is temporary or lengthy, those are all tailoring arguments. I'm looking at our NRA v. BATC case and if you get to scrutiny, we say a regulation that threatens the right at the core of the Second Amendment, for example, the right of a law-abiding responsible adult to possess and use a handgun to defend his or her home and family triggers strict scrutiny. So shouldn't we be asking whether the burden here is on the core of the Second Amendment right? Maybe that's your argument. I think that's the question and the answer is yes because it disarms anyone subject to a protective order in their home for purposes of self-defense of person, family, and house. That is the core of the Second Amendment as recognized in Heller, as articulated probably even more specifically in McDonald v. City of Chicago. So any restriction that takes a firearm away from a person, even if they choose to live alone, and makes them vulnerable to a home invasion absolutely goes to the core of the Second Amendment as articulated by the Supreme Court. The reason I'm talking about some of these other issues is the Fourth Circuit and the Tenth Circuit and to an extent the Eighth Circuit have used these observations to look to a more relaxed level of scrutiny that I do not think is appropriate but I think your analysis in the NRA's analysis is exactly right. Right well I'm just reading what we said in the case but when would a protective order be sufficient, be sustained? When would a protective order be sustained under your analysis? Under our analysis the statute would have to have additional findings by the district court or an exception that allows for the possession of a firearm in the home while living alone. Well let's take that in an order, what additional findings? Something that ties a firearm to the underlying allegations. So 922 G8 has a list of requirements placed on the protective order. Well you're looking at a court hearing presumably on the basis that this person presents a danger to the individual who sought the protective order. Even Congress has recognized your honor that a protective order alone is not enough. I'm just tracking your argument here. Well let me put it this way, firearms are not always present in domestic violence incidents. In fact they're usually not present yet without connecting that incident to a firearm we're disarming everyone who's been subjected to a protective order and because it's a fundamental right courts and Congress should be very careful about doing so because it sweeps broadly to individuals who pose no harm to anyone. United States versus Maheen out of the fourth circuit is an excellent example of what I'm talking about. A person exhibited this conduct, it was an assault, it wasn't done with a firearm. The person honored the protective order, stayed away. The person was a gun hobbyist, decided to go to the shooting range, rent a firearm for target practice, then turns the firearm in leaves. He was convicted and sentenced under 922 g8 even though there was no meaningful relationship between a firearm and harm to any other individual. I know your time's running out so you asked for those additional findings and then you said something else. Yes your honor. An exception for in home. Okay exactly. So if a person is in a volatile relationship and they assault the person they're cohabitating with then a civil court says you have to stay away from that person otherwise you're subject to a class B misdemeanor violation of protective order. The person says I honor the court's wishes, I move out living alone. I think a more narrowly tailored statute here that goes to the core of the second amendment would be as long as you're living alone not cohabitating with anyone you can possess a firearm only in your home for purposes of self-defense. Is it your contention that the situation of surrounding Mr. McGinnis would satisfy neither of those two conditions? That's correct your honor in the alternative of subsection c and I'm almost out of time here and I'd be happy to get into that on reply but the the minimum culpable conduct here can't give the jury confidence beyond a reasonable doubt that the protective order satisfies these conditions but that's the nutshell argument and I'll reserve the rest of my time. Thank you your honor. All right so thank you. Thank you good morning your honors and may it please the court Andrew Lang for the United States. McGinnis was convicted under 922 g8 because he possessed a firearm while subject to a protective order that explicitly found that family violence had occurred and was likely to occur in the future and that explicitly prohibited him from using family violence against his former girlfriend Sherry Thrash. The protective order satisfies both subsections or either subsections of 922 g8 and 922 g8 is facially constitutional at both steps of this court's NRA analysis. The first question that this court has to ask the first question I have to ask is why isn't this case controlled by Emerson? So I think Emerson still has a lot to say about why Congress enacted 922 g8 particularly with respect to c2 but the problem post Heller and especially post NRA is that Emerson doesn't do the full two-step that NRA requires. So Emerson doesn't approach the question by first asking is there a historical analog to 922 g8 and there's really nothing in Emerson that answers that question although there is some content in Emerson in the government's view that answers some of the questions relating to intermediate scrutiny. So the first question that we have to ask that I don't think unfortunately Emerson definitively answers for the court is whether there's a historical analog for disarming people who are found to be dangerous and at that level of generality which NRA spends some time talking about this kind of prohibition against firearm possession is consistent with second amendment history and tradition. As we discuss in our brief the Pennsylvania minority proposal and other founding era documents suggest that it was commonly understood that people who were considered to be irresponsible or dangerous could lawfully be disarmed consistent with the then prevailing understanding of what became the second amendment and so for that reason much like NRA's discussion of 18 to 20 year olds where there may not be a one-to-one 1791 analog to a precise version of a federal law we can still look back into second amendment history and practice and conclude that there was an understanding that people found to be dangerous could lawfully be disarmed. So for much the same reason that NRA reached that conclusion with respect to 18 to 20 year olds this court should reach that conclusion at step one and referring back to your honor's question Judge undertook is effectively step one even though it doesn't articulate the full two-step analysis it doesn't talk about levels of scrutiny but I think the historical traditional analysis in Banna is persuasive and it is effectively what this court calls for in step one of NRA. That said even if this court finds that the conduct criminalized by 922 g8 is somewhere protected by the second amendment either at its core. Before you move on to that I mean so tell me see I read our decision in NRA that was you know before my time 2012. It talks about evidence of a long-standing historical tradition of gun regulation you know that that this the law at issue must be consistent with. It also says it also asks whether the conduct at issue being regulated it asks about that what is the conduct at issue being regulated and what I think is being regulated here is gun possession gun ownership for all times for all purposes in the home. It's just a flat ban. I understand it's bounded by the protective order but if I'm looking at that and that's different than NRA. NRA wasn't a flat ban it was a commercial sale ban. Why isn't this just a flat ban on guns for all purposes all places all guns why doesn't that get us by step one and we got it we have to go to step two. So first of all I agree with the premise of your honor's question this certainly is different from and more restrictive than the regulations that were challenged in NRA. The problem though is that a conclusion that any categorical restriction on firearm possession even in the home necessarily implicates the second amendment is contrary to the observation in Heller that people like felons and the mentally ill can be disarmed categorically. But Heller does Heller just says those are presumptively valid it doesn't talk about what analysis we'd have to go through and of course Heller didn't have in mind some circuits made that one up right the two-step thing. I suppose I would say anyone with ADHD mentally ill. So I understood that passage in Heller to be referring to the provision of 922g requiring commitment to a mental institution. Nobody's committed anymore so that's pretty that's really meaningless. I don't think you've got to do that in a later case. I think we do occasionally prosecute people who've been committed in the past but I agree with your honor that it's it's more unusual than it was when that provision was enacted. But returning to your honor's question the prohibition here is consistent with other categorical prohibitions is my point about consistent with broader historical practice that recognize that people who are dangerous or irresponsible can be disarmed. Heller explained that it's it's examples of felons and the mentally ill weren't exhaustive and there might be other categorical prohibitions that are presumptively lawful and I think although that language as your honor pointed out doesn't fully flesh out the two-step analysis that this court later inferred from Heller. It really is talking about whether something is consistent with historical practice at step one whether something is presumptively lawful notwithstanding the second amendment even if it is a categorical prohibition. So turning to step two of the NRA analysis I think NRA itself makes very clear that the level of scrutiny here is intermediate not strict because this is not a historical outlier for one and second because this disarms a discrete group of people for a particular period of time. Those are all features that this law has in common with the challenge regulations in NRA. This court observed that 18 to 20 year olds will age out of the challenged regulation and this court observed that the law targets only a particular group for a particular period. 922 g8 does exactly the same thing and it has the added feature of targeting only a very specific group that has been found in some way to be posing a risk of violent behavior and that I think your to what extent do you consider empirical data that that bears on these relationships between persons who are who have who are involved in a relationship here with under the just take this fact pattern which is as described would be a very common not an uncommon occurrence. To what extent would the empirical data show the incidence of violence that the gun actually where the gun is used be relevant? We talked about these in normative terms and historical terms and words and there's a whole lot of data flying out there. It's one extraneous piece of data there's to demonstrate that that 48 percent of every death by guns in this country is actually suicide. Now that tells you it can tell you a lot about what's going on or not and we're talking about well you know this is not narrowly tailored and this person's been done that but they didn't he didn't have a gun before etc etc. What's your what's your view on that? So first of all I think that there is a place for the qualitative normative historical analysis particularly of course there of course it is but it's informed by the and the content the framework of that has to be what what's what the reality is today. I and I agree with that your honor and I think particularly when uh this court looks to whether there's a reasonable adaptation to an important government interest I think that's where the the quantitative questions come up and I would I would suggest that there are a number of courts particularly the seventh circuit in scion on bonk uh discussing 922 g9 that have done a fairly deep dive into the medical and the relationship between past abuse and future abuse not only that but the relationship between their possession of or access to a gun and the likelihood that they'll use it against their intimate partner. Maybe is a simple answer to that's all very helpful is a is a sort of a shorter answer to judge Higginbotham's question is the empirical data to the extent that the analysis allows us to use it goes to tailoring right in other words whether there is a means and fit at whatever level of scrutiny between what the law is doing and what the goal is yes so it goes to tailoring yes that's that's right your honor I agree with that uh so again I think that having been said the the empirical data that are available suggests that there is a very strong fit between a prohibition against uh domestic abusers and people who are at risk of violence having access to firearms uh and and uh this kind of categorical prohibition uh certainly it's enough to survive intermediate scrutiny in the government's view uh and I think again NRA makes clear that intermediate scrutiny really is the appropriate uh lens of analysis here particularly given the similarities between this restriction and the restriction in NRA. Is it the government's view that this the tailoring that's inherent in this law the procedural and substantive tailoring of the protective order would it survive strict scrutiny? It is the government's position we uh make that point I think very briefly in footnote four of our brief really primarily because in our view NRA makes it so clear that in NRA's words unquestionably intermediate scrutiny would apply but yes it is our position that so getting back to that I mean NRA does make some of the points that you just made with respect to the level of scrutiny but NRA also makes the point that I made earlier maybe with respect to the other side that the the prohibition in NRA is far more limited than this prohibition in the sense that the 18-20 year old still were able to possess a parent could give them a firearm this was a commercial um a ban on commercial sales by federally licensed firearm dealers and that's something Heller actually mentioned restrictions on commercial sale this is different I grant you it is bounded by the terms of assume that someone subject subject to a protective order cannot possess a gun of any kind in the home for any purpose yes yes and and of course we acknowledge that there is that very significant difference between the regulation in NRA and 922 g8 this is a more sweeping ban on firearms possession access use all of those things are covered not just sales but it shares very important similarities with the regulations in NRA it's a particular group of people that have determined to be irresponsible or dangerous for a particular period of time and the procedural limitation I think is significant for all of the reasons discussed in this court's opinion in Emerson 922 g8 c is designed so that only people or at least designed against the presumption that only people who are actually dangerous will be subject to 922 g8 either people who as to whom there's an actual finding of dangerousness or people who are prohibited from using force what so in this case uh sherry thrash herself took the stand and described being violently assaulted twice McGinnis tried to throw her out of their house and her ribs were broken on at least one of those occasions well your brief just says bruised ribs I that might be right I I apologize if I missed that's a big did I say broken I apologize your honor but when you say throw her out of the house is that literal or is that figurative those are her words and I think the page 412 of the record is where she says uh she was thrown out of the house and her ribs were bruised I think it's all part of a single narrative so it seems like she was physically thrown out of the house in in any event the evidence uh turning to the sufficiency point the evidence suffice to allow the jury to find that the reason that the protective order issue was because of physical abuse there was no other reason why the protective order might have applied uh so that that I think did he have did he possess a weapon of any kind when they were living together before he where she departed there's no indication in the record that he possessed a gun uh while they were living together uh but the facts of his gun possession are unsettling he attempted to buy a gun he was told at the point of sale and then again by an ATF agent that he couldn't buy a gun and in fact he was told in writing that he couldn't buy a gun because he was subject to a he was firing outside in a jurisdiction where it's illegal to do that and what was the weapon he was found with I believe it was a short barreled ar-15 with a 3d printed receiver so in fact he had conceivably manufactured part of the gun or found it somewhere else that's not apparent from the record perhaps our memory is incorrect but I thought that he was unable to purchase a receiver so he constructed a receiver of his own by plastic using the plastic device machinery a 3d printer I think that's that's the fair inference from the record is it proven that he was firing the gun in that park because I thought there was something odd in the statement of facts that the police were called out for one purpose to the park and then they found him there that's my understanding so officer Jefferson from Grand Prairie PD testified at page 482 that he was responding on foot to a call which apparently was unrelated to McGinnis and heard three gunshots coming from off to the side of the road but there's no dispute that McGinnis had fired the right of the 15. I don't believe that was ever disputed at trial and it's not my understanding that that's disputed here. Was he illegally possessing a weapon? Yes he was because as your honor pointed out earlier it was unregistered with the ATF and there was testimony and he acquired that weapon after she had departed yes after after the protective order so we have a person that they have described as an abusive relationship whatever the dimensions of that are she she departs she's frightened up and he goes out and manufactures a weapon which is not a on its face it's all should be outside the historical the purpose of such a weapon ain't haunting there's some common sense here and he would turn down for weapons that he sought then and then went out and and manufactured one also illegally so those are the facts we have here. Is there any evidence that he had violated the protective order by threatening her in any way after it was entered? Not on the record your honor. And it was two days before the conclusion of the protective order? That's right your honor it was uh I believe late July of 2017 and the protective order had issued. Where did he carry this weapon? I'm sorry your honor? Where did he carry the weapon? He was arrested and he had it where was it? Uh the gun was in his backpack I believe when he was approached by the officers one of them testified that he told them I have a legal weapon a backpack not in his home. Yeah okay. Yes those are the circumstances of this case of course uh our analysis is is tailored toward a facial challenge to the statute but I I think I take your honor's point or at least implication that these circumstances are a good fit for the reason why we have 922 g8 in the first place. The statute um as it references a protective order doesn't have any time bound some outer time bound is that right? Well except to the extent that it would only apply for the duration of the protective order but no it doesn't have a maximum. But the question here is the validity of the of the protective order ultimately uh as whether it contravenes the second amendment on the facts of this case not some abstraction about well and in fact the challenge in mounting a facial challenge to the statute is demonstrating that there are no circumstances under which the statute would apply constitutionally. Framework of this case that's yes of course your honor and so here the the duration of the protective order was only two years and it it may be that there are 100 year protective orders or lifetime protective orders under the laws of other states but those would at best be vehicles for as applied challenges for those defendants not weren't we talking about a circuit case with a 50-year protective order? I believe that longer protective orders exist but again the requirement in mounting a facial challenge is to show that there are no circumstances under which it's constitutional not that there might be some under which it's unconstitutional. Well a 50-year protective order would be like people offering me a lifetime warranty and I tell them no I really have a more protection to that than a lifetime warranty I'd like. I admit I don't have personal experience with protective orders. Unless the court has any other questions about the sufficiency of the evidence with respect to 922 GHC or our confession of error we ask the court to affirm with a vacator to correct the judgment. Thank you. Thank you. Mr. Beck, rebuttal. Your Honor, I would like to begin, may it please the court, with a comment made by the government right at the end dealing with unconstitutional in all circumstances that rule come from United States versus Salerno 1979. This statute is unconstitutional in all circumstances because one it never requires a finding that a firearm was used in a domestic violence incident. In number two it's a total disarmament without an exception for leaving alone for purposes of self-defense. The government also talks at length in its briefing and a bit here today about some abstract terms dangerous irresponsible not virtuous. Whatever those terms mean it's not what they say it means in the perspective of the early colonies and in the perspective of the framers. We don't need to deal in abstractions. What is an example where a person was disarmed in all circumstances because of an allegation of domestic violence in the historical record? Judge Higginbotham, you had a question for the government about empirical evidence tying firearms to incidents of domestic violence. Where is that evidence in this record when the government has the burden of demonstrating tailoring under either intermediate or strict I think there was also a lot of wisdom in Judge Sykes' dissent in Skeen and I would point the court in that direction. As to the second point about the sufficiency of the protective order the statute 922 g8 repeatedly directs courts to look at the findings made by the protective order court. So the question is the court subject to a court order that includes a finding or by its conduct described here may not have been satisfied for the protective order no reasonable juror could have confidence beyond a reasonable doubt that that conduct occurred. Second as to c2 the introductory phrase by its terms explicitly it's our position the ninth circuit was correct United States versus Sanchez that congress means what it says here that it has to say this. There was a finding there that family violence is likely to occur in the foreseeable future I thought. That's exactly right your honor in the way the state of Texas defines family violence is broader than what you see in c1 and it certainly doesn't by its terms explicitly prohibit the use attempted use or threatened use of force and I think there's an important point here that as to my second point the government repeatedly pushes back on our interpretation saying that we're taking too narrow or too rigid of an interpretation that this language should be interpreted more broadly than what we're saying yet the government then turns around and says but it's also very narrowly tailored and there's an inherent tension in the way the government's approaching this with a broad reading and then turning around and saying it's narrowly tailored. Was there any evidence that um after McGinnis threw Ms. Thrash out of the house that he had continued to threaten her in any way? No your honor there's not. The description by Ms. Thrash pages 406 to 428 in the record is incredibly disturbing but what we see is no firearm in no subsequent activity. She had not seen him for a period of years at the time she testified in the sentencing court and we don't know what she said at the protective order hearing. I don't recall seeing a transcript of that uh and so I don't think we go off of when I read the statute. We don't know what you do have is a finding by a court that he is a credible threat to her safety. I disagree your honor. Well I read it I'm looking right at it. It says there's a likelihood of in fact people in the state of Texas get protective orders against other people. I used to do this for a living for two years before law school worked in domestic violence and it's incredibly easy. You don't have to have threats to safety. You don't have to have physical violence. You certainly don't have to have a firearm. It's for these reasons we ask this court to vacate count two of the conviction and also to remand to the district court to amend the condition of supervised release to conform with the oral pronouncement. Thank you your honors. Okay thank you sir.